Lewis v. Evanston Insurance Company Good morning, Your Honors. May it please the Court. James Gordon for the appellants Kalandra and Christopher Lewis. Let me just first say that it's an honor to be before the Court today. Spencing with the pleasantries, let me commence with my argument. Your Honors, the central issue before the Court today is whether or not Evanston Insurance Company is going to be relieved of the consequences of its decision to deny coverage to its insured Denise Vega. The District Court's order internally recognized, even under the District Court's own policy interpretation, that Evanston breached its duty to defend Ms. Vega. That can be found in the Court's observation that Ms. Vega did not participate or otherwise supervise or control the massage at issue in this case, which is directly at odds with the pleadings in the case. If you take that observation and apply it to the Court's rationale under their policy construction argument, then we absolutely have a breach of the duty to defend. And once Evanston has breached the duty to defend Ms. Vega, the consequence to that is that the final judgment entered in the underlying State Court action is preclusive as to all factual matters necessarily determined by that final judgment. Your Honor, that leads me to the first critical issue, which is the preclusive effect of that underlying State Court judgment. Your Honor, it's imperative that the Court first determine the correct facts before proceeding to the policy construction argument. The District Court did not do so. Rather, the District Court proceeded to a policy interpretation without considering at all the implication of the final judgment in the State Court action below. As detailed in our brief, the underlying State Court judgment crystallized those facts, those factual issues necessarily determined by the judgment. And that substantive legal principle, Your Honors, is found in the Jones case, the Florida Supreme Court decision detailed extensively in our brief. And the rationale for that decision, I think, highlights the error in this respect. Your Honor, it's a bedrock principle of our judicial system that courts are to exercise comity with respect to other courts' final judgments. And here, the District Court's judgment disregarded the State Court's final judgment regarding those factual issues. So consequently, what we now have is a State Court judgment that found Mr. Alpizer was an employee of Ms. Vega and she was consequently vicariously liable for his acts. While at the same time, we have a District Court judgment that finds the opposite, that Mr. Alpizer was not the employee of Ms. Vega. Pardon me for interrupting you, sir, but doesn't Evanson admit, I do believe they admit, that the facts necessary to the State Court judgment are binding on them through the Koblenz Agreement? They try to say that in their brief and the judge said that below. They give lip service to that, but then they completely disregard it. My point is, once they've said that, isn't your job simply to point out to us, one, two, three, four, quick, which those facts are, so you can move on? Because if you can't show that this contract covers vicarious liability, the game is over for you, even if you're right about the facts. That's correct, Your Honor. The coverage issue... Clock is ticking and I think it's up to you whether you want to pursue your time on the facts that were necessary to the judgment below, or you want to let us figure that out? The facts necessary to the judgment below were Ms. Vega's liability for one, and that liability had to stem from her being the employer of Mr. Alpizer. That was the basis of the amended complaint? That's correct, Your Honor. Those are the critical facts necessarily determined by the state court judgment, which the district courts... Why don't we read into the policy express exclusion, quote, liability arising out of the insured's activities in his or her capacity as proprietor, superintendent, executive officer, director, partner of any business enterprise not named as an insured under this policy. Ms. Vega is named as an insured under that policy. So what that provision would apply to would be her capacity as the owner of Serenity Spa, which is the argument that Evanston makes, that because she is the owner of Serenity Spa and Serenity Spa employed Mr. Alpizer, that exclusion would apply. But that presupposes and assumes that Mr. Alpizer is the employee of Serenity Spa rather than Ms. Vega. So that exclusion does not apply to Ms. Vega herself. It would only apply to her in her capacity as the owner of Serenity Spa. So given those necessarily established facts, Your Honor, what that leaves us with is the coverage issue. And... Your other side agrees that rendered can mean either done or provided, right? That's correct. Furnished, provided. There's two meanings. That's correct. And so we have an admittedly ambiguous term in the insuring clause. And so what we have done is to look at other portions of the policy that relate to vicarious liability and made an attempt to clarify or otherwise harmonize those provisions with this ambiguous term. And that's precisely what we did before the district court. Ms. Brown. Why don't you read the exclusion as excluding services, professional liability coverage for services she personally did not perform? Which exclusion, Your Honor? Exclusion B, the one Judge Marcus just talked about. Why wouldn't you read that as, well, maybe it's the other exclusion. I guess you get rendered by the insured, so you're saying provided by the insured, that would be through vicariously through him? That's correct, Your Honor. That's why you're saying this exclusion doesn't apply. That's why the insuring clause covers this scenario, because Ms. Vega furnished or provided those services through her employees. You want to talk about the provision of the contract if your adversary got upset with you because he said you were odious? Remember which one that is? There's a footnote in your adversary brief that said it was odious of you to raise the possibility that the district court had misunderstood the provision in the contract. That was the insuring clause, Your Honor, because the district court in its analysis, it subtly changed the language of that provision. I was simply ... No, you can subtly change, I mean, it changed, didn't it? The language reads that it's by reason of any act, error, or omission in professional services rendered, so that's an act of professional services, right? That should have been rendered by the insured, and then she read an arising out of the insured's conduct. That's correct. She read into the contract the word insured in front of conduct. That's correct, and what the provision actually says is arising out of the insured's professional service, or the insured professional services, and that's the point of the State Farm v. Campbell case, that the focus of that type of provision . . . The clause is redundant as interpreted by the judge, because it's an act arising out of an act. That's correct, Your Honor. It won't work. I'm sorry? It won't work. It will not, Your Honor, because the focus is on the act, or excuse me, on the identity of the person rather than the act, and that's the State Farm v. Campbell case. You look at the judge's opinion, if you consider the opinion like an arch, you know, an arch made out of stone, and there's a keystone that holds the arch together, wasn't it her interpretation of that clause that's the keystone that holds her opinion together? It does, Your Honor, but once you pull that out, your arch falls down. That's what I mean. That's correct. That interpretation, that alteration to the policy language is the fundamental issue here. That's going to the question of whether or not the contract is ambiguous, because we know that render can mean two things, right? That's correct. The part of the insurance contract that deals with liability for the landlord, it's the add-on clause? Correct, Your Honor. The additional insurance endorsement. The additional insurance. That clause clearly provides for vicarious liability, doesn't it? It does, Your Honor. Okay. And isn't the interpretation of your adversary that it only applies to the personal liability piece of the contract? As I understand Evanston's argument, they believe that that additional insurance endorsement only applies to the general liability coverage part. Okay. Now, doesn't the general liability coverage part expressly exclude vicarious liability? It does, Your Honor. That's why that argument doesn't make sense. And how can a contract include and exclude at the same time? At the same time. And one other thing on that issue, Your Honor, just to quickly answer your question. If you look at the deposition testimony of Mr. Foley, he testified that it applied to both coverage parts. Now, he's a designated representative of Evanston. And what he relied on to make that, to give that testimony was the certificate of insurance. And the certificate of insurance on its face covers both parts of the policy and even specifically references the professional services coverage part. So you've got Mr. Foley recognizing as to, it applies to both coverage parts. And we have a document that references both coverage parts. So I think the argument that you're trying to make. I gather it's important because the coverage under this personal landlord can't be any broader than the coverage for the basic insured. Isn't that bedrock insurance law? It is, Your Honor. The additional insured can't have greater rights. You have to equal them up. That's correct. And if they won't, if two and two won't add up to four, then it's ambiguous. That's correct, Your Honor. Okay. I'm looking at your amended, second amended complaint. Here's my question. All right. Count two is vicarious liability of Vega. You say Vega employed him. And in count three, you have vicarious liability to Serenity Spa. And you said Serenity Spa employed him as a massage therapist such that he was under the supervision of Serenity Spa. Okay. Now, is Serenity Spa, or do we know from the state court proceedings, is that a corporation or a trade name? It is a corporation, Your Honor. Okay. Okay. And was there a contract or any employment agreement in the state court introduced that Mr. Alpazar signed or didn't sign or anything? There was no agreement in the record, Your Honor. Okay. Was there any paychecks to show he was paid by Serenity Spa or paid by Vega or was he just got his own money from his clients? What does the record tell us? There were no documents in the record related to those. Well, what are the depositions? Was anybody deposed? Was he deposed? Was she deposed? What does the record tell me? Ms. Vega was deposed. And what does she say? Ms. Vega testified that the procedure for payment was that the payment would be collected by the office at the spa and then the portion that went to Mr. Alpazar would be taken out of that and paid to him. Okay. And so collected and do we know what the check, did Serenity Spa write the check to him or did she individually write the check to him? I don't believe that there were any checks submitted into the record, Your Honor, so I don't know the answer to that question. Okay. Because you've got inconsistent . . . I mean, the reality is that he's employed, if he's employed at all and not an independent contractor, it looks like he was an independent contractor to me, but I'm looking at the allegations of the complaint. You first say this corporation employs him, then you say she individually employed him and they're inconsistent allegations. That's correct, Your Honor. We're pleading in the alternative, which . . . Right. Right. So I don't know why there's a state court fact finding as to whether he worked for Serenity Spa or worked for her. Because the final judgment was entered against Ms. Vega, not Serenity Spa. And the only way that we can hold her liable is through her vicarious liability for the acts of Mr. Alpazar. So you can create something that's not true by just the judgment. I mean, that doesn't say anything other than a final judgment was entered against her. Your Honor, I would disagree that we're creating something that's not true. There was evidence before the court that . . . or evidence in the record, I should say, that indicated that Mr. Alpazar was, in fact, the employee of Ms. Vega. What was that evidence? The evidence was that she's the one that procured the lease for the premises where he worked. She's the one that procured the insurance required by the state . . . But is the lease in the name of Serenity Spa or in her name? In her name. Okay. So what you're getting at is the very issue of why we don't look past the judgment. Because all those questions relate to issues that should have and were decided in the underlying state court litigation . . . Your point is . . . . . . that Evanston chose not to participate. If they wanted to make the independent contractor point of view, they should have showed up in the state court and done it. That's correct, Your Honor. And the pleadings triggered coverage. And so they had an obligation to defend. And by not showing up to defend, they don't get to come back and retry this case again at the district court level. Thank you, Counsel. Thank you, Your Honors. Good morning. May it please the Court. Richard Jones here on behalf of Evanston Insurance Company. Your Honors, the lower court did not err in determining that the insurance policy at issue did not cover claims of vicarious liability. I want to correct a couple of issues that came up in opposing counsel's argument. I do think that it is inherent to the lower court's analysis, as was observed, that she accepted for purposes of the argument, the proposition from opposing counsel, that what we're looking at is whether the policy provides coverage for vicarious liability. So she accepted that component of the Koblentz Agreement before then turning to the analysis as to whether the policy itself, based off her interpretation, provided coverage for vicarious liability claims. Now I want to start there with what exactly vicarious liability is. Vicarious liability is the absence of any active participation, any active fault. It is a purely passive form of liability. So it presumes no participation whatsoever. So the interpretation, I believe, that has to be advanced by opposing counsel to conceptually work here is that the policy has to provide coverage for the active non-participation of the insured. And we believe that the insuring clause in Coverage B, as drafted, plainly requires some sort of participatory act on the part of the insured. If you look at the actual language itself, it references acts, errors, or omissions, which is language which is describing some sort of activity. If you go a little bit further in it, it requires professional personal injury to which the I apologize, or omission in professional services rendered or that should have been rendered by the insured and arising out of the conduct of the insured's professional services. Now the policy specifically defines the insured as a natural person, a member. So when we read this policy for its plain language, as the lower court did, we believe that this very clearly requires some sort of connection between the insured, Denise Vega, and the actual injured party. And so we believe that the lower court's interpretation on that point is correct. Now a couple of other points. Why is that so? I mean, you're glossing over that so quickly. The insured's professional services is a defined term. Basically, we'll just call it massage services, right? And so you'd read that clause as to say this is conduct that should have been rendered by the insured and arising out of massages by anybody, not just massages given by the insured. I disagree with that, Judge Clevenger, because this policy only defines the insured as one entity and it does require some sort of act or omission. So if the theory of liability is vicarious, which presumes no participation, and that's the presentation that's been made here today, you're necessarily saying that this- The contract contemplates vicarious liability where the landlord is brought into the policy. I disagree with that interpretation, Your Honor. If you look first- Explain explicitly that there is vicarious liability? Well, I believe that you're referring to the certificate holder additional insured in the general liability prong of the policy. And if you look at the way that that clause is structured, it's designed to rein in and to limit the scope of the available coverage. So- What does that mean? Well, if you look at it like this, it's a CGL policy, Commercial General Liability. But wasn't the hypothetical in the deposition below the situation when you're in South Florida and it rains a lot and the entrance into the spa could be wet and that somebody was supposed to put a mat down, you know, to keep people from falling down, and due to the negligence of an employee, the mat wasn't put down, somebody slipped, so they sued the landlord. That's generally correct, Judge Klaver. And that would be a situation where the liability would run on account of an act not by the insured, but by the employee, the insured. Well, I think it's the- I think it might be the other way around. And isn't that exactly the hypothetical that was given?  Vicarious liability? I do not believe that it's consistent with the policy language. The reason being is that the additional insured, who is defined as being the landlord, has a restriction on the kind of coverage that they can get. So for example, the exclusion- or I'm sorry, the certificate holder additional insured is to prevent the scenario where a landlord could come in and get full benefits under the policy. Instead, what it tries to do is it tries to funnel whatever- Isn't the hypothetical I just given covered by the policy? Can you repeat the hypothetical, Your Honor? The additional insured. The additional insured, the landlord gets sued, Clevenger fell down going into the spa and because there was water on the floor and there should have been something that prevented that, so I sue him. And he wants to- he says, that act was taken by the employee and that's vicarious act of the insured and I want my money under the policy. I would agree with that, Your Honor. That's vicarious liability. Okay. Data point one. Data point two, the general coverage in the policy expressly says no vicarious liability, right? In coverage part A, in the insuring agreement, as opposed to in the exclusion, it describes the policy as only having coverage available to the member in terms of the bodily injury component. And then it goes on to say there's no vicarious liability. That's the interpretation which can be supplied. Isn't that the language in the provision? Yes, it is. And part of your whole adversary's argument was, well, you expressly excluded vicarious liability in general, therefore you must have meant to include it over here. You answered that, but in the process of answering, you agreed that general liability excludes vicarious liability. I agree that the general li- I believe that the policy as a whole excludes vicarious liability claims. Well, for- you know it on the general side because it's written there, correct? Yes, Your Honor. Okay. So I'm saying to myself, we know it's excluded on the general side, right? But you maintain that the additional coverage for vicarious liability only applies to the general side. Correct, Your Honor. That's inconsistent. Not necessarily, Your Honor. I believe that the idea behind that policy- Tell me why it's not inconsistent. Well, because I- You say vicarious liability exists in the additional insured thing, but it's only available for general liability, not for professional services. Correct, Your Honor. But your contract provides for general liability to say expressly there is no vicarious liability. Yes, as it pertains to the member herself. Yes, Your Honor. But that's what we're talking about here, sir, is vicarious liability. Well, but you're talking about vicarious liability in the context of the general liability portion of the policy, the CGL portion of the policy. The interpretation of the policy that we believe is correct under these circumstances- When the insurance company puts out a policy where they recognize that they will cover some claims for vicarious liability in the policy, and then they want to argue, but there are other places where they expressly don't want to do it, isn't the easiest way to say we don't cover it and the other clause? I mean, the ambiguity in this contract would be so- I could correct it in a New York minute. Well, I would not challenge your abilities in that regard, Judge Clevenger, but I would say that the- I would say that I think the point of that entire provision, the additional insurance provision in the general liability part of the policy, is to make sure that there's no possibility, there's no question whatsoever that this policy does not apply to the individual employees of the landlord. It deals only with circumstances which are created by something that is the fault of the individual member. I think that is the correct interpretation of that, and that's ultimately the interpretation that we argued below and in our briefing. So I can understand where there's this idea, this sort of- this position that, well, this must mean there's vicarious liability, or there's protection for vicarious liability. For me, it's more there is a question that there's ambiguity. So to me, I don't know whether vicarious liability was really intended one way or not, but I know it's intended in one part of the contract, not intended in another, and the question is, is that clearly excluded? Well, I think that the remaining- You would agree that if there's ambiguity, it reads against your client, right? I would agree with that, Your Honor, yes. But I do believe that as it pertains to coverage B, which is the only coverage which is at issue in this case, I don't believe that there's any ambiguity whatsoever as it pertains to that portion of the policy. Now one of the points- The so-called odious clause, the one that I referred to as the keystone of the arch, if the judge is wrong on that, if her weight that she puts in her opinion on that particular clause is wrong, then isn't your argument substantially impaired? Because you agree that rendered has two meanings. I agree that rendered has two meanings, but I think that if you attempt to supply the meaning of rendered to this policy presented by opposing counsel, you wind up with an insuring agreement that doesn't make a whole lot of sense in light of the restrictions placed on who has to actually provide the service. Most of that argument is being supplied by a case called regional MRI, and I think that case actually presents a very interesting distinction between what happened here. The definition of rendered which is being presented is based off of a case involving a PIP statute, and there was a question as to whether an MRI facility, which does the technical part of an MRI, basically does the technical part, takes the bills, is responsible for the bill, and then hires a 1099 employee as opposed to actually retain a doctor, is rendering services. And the conclusion from the court was, doesn't really matter. And then they go on to draw distinctions based off of a bunch of different county court cases which supplied the decision. There's a distinction in the line of cases presented there. I believe there's one called, it's either motion x-ray or total x-ray, which is in one of the county court decisions where the court observed that in that instance, the facility did none of the work whatsoever, and all of it was outsourced. So the conclusion there was that that was a potential violation of the fee brokering components of the PIP statute, and as a consequence, no service is rendered. In contrast, the court emphasized the fact that the facility basically did everything. You know, the only real distinction there was whether or not one component of it was done by a 1099 employee versus an actual employee. So I think within that framework, what you're seeing, the definition of rendered, although important to that decision, I think is being ascribed far too much weight for purposes of this argument. Because at the end of the day, in the regional MRI case, the facility did most of the work and was ultimately responsible for it. Here it is completely, the entire theory is purely vicarious, which assumes no participation whatsoever on the part of the insured party. And so if you take the regional MRI example and then try to apply it to this clause, it still ultimately works out in our favor, because in regional MRI, the facility did most of the work. In a massage context, a person does the massage. I mean, somebody may collect money at the front register, but that's really no different than the situation in the cases described in regional MRI, where all that was done was billed out, and that was considered to not be services rendered. It would have actually been a fee brokering scheme under the PIP statute. Now I do want to touch on another point. There's been a number of references to exclusion B in coverage part B, and then there's been a lot of discussion about the preclusive effect of the Koblentz agreement. Now even the Koblentz agreement itself references Serenity Spa, as does the complaint in this case, and as acknowledged in the reply brief in this case. So the question, when you move from the duty to defend question, you look at the indemnity question, is you ask, how much is material to the judgment? So things like identity, the judgment's existence, all of that is precluded. But there's a number of cases which have come out from the federal courts which have expressed the notion that when you're asking the question of indemnity, you look at the case from the And to correct a few things from the record, Ms. Vega did testify that Hansel Alpazar was an independent contractor. As I noted in a footnote in our brief, we had originally, when we were doing the summary judgment below, we had attached or had intended to attach the actual employment contract, but for whatever reason, the wrong exhibit got put up there. But if you go through the exhibit list in the depositions, it shows all these different things, including an independent contractor agreement that was in place between Serenity Spa and- It's not in the record. It's the problem. It's correct, Your Honor. That is true. She did testify that she didn't withhold or take out any tax. It was up for him to do that. Correct, Your Honor. So I do believe that in terms of asking the question on the coverage defense side, does exclusion B of coverage part B apply? I do not believe that is affected in any way by the lower court's consent judgment. And the reason being is that if you look at the language in exclusion B, it's extraordinarily broad, arising out of the operation of a business, in a sense. And we know that the language arising out means something less than proximate cause, a connection. So the fact that they have attempted to essentially interpose Denise Vega as the entity doesn't change the actual fact that there was a corporation, which she described as having multiple employees, which was admitted to by opposing counsel in this argument here, that arguably would trigger the exclusionary language there. Now we had argued further and harder in our briefing that the court should just throw out the entire idea that he was the direct employee of Denise Vega. But I think an intermediary step between that is to look at the facts that were extant and ask whether or not under the policy on exclusion B, if this arose out of, and that was actually part of the ruling in the court below. Judge Polster-Chappell acknowledged that exclusion B precluded claims like this under the professional liability prong for claims arising out of the operation of a business and accepted the representation of Denise Vega that Hansel Alpazar was an employee of Serenity Spa. All of this arises out of her operation of that entity. I see that my time has expired. If the court has no further questions, I would respectfully request that this court enter an order affirming the lower court's decision. Thanks very much. Thank you. Mr. Gordon, you have reserved five minutes for rebuttal. Thank you, Your Honor. I want to go to the grant of coverage, quote, any act, error, or omission in professional services rendered by the insured. So that would be rendered by Vega, which we've got could mean provided by her or furnished by her. So you're okay there. Are you with me? That's correct, Your Honor. Then it has and, the error and, arising out of the conduct of Vega's services. Okay. Now, I assume it arises out of her conduct, not because she did the massage, but because she owned the business and supervised him. Is that her conduct? What conduct of her? It's got to be both rendered by her, okay? Correct. So that could be furnished or provided, so he could do it, but it's got and arising out of the conduct of Vega. So what is Vega's conduct that triggers that and? Your Honor, the conduct has to arise out of the insured's professional services. So it says arising out of the conduct of Vega's professional services. That's correct, Your Honor. Okay. So what is her conduct? Just tell me what participation, what act is the conduct? It's Alpazar's acts on her behalf. Your Honor, that is the precise thrust of the state. It seems like it's got to arise out of the conduct. It can be provided by her, but it's got to arise out of something. And when I go to your complaint, you say she supervised and controlled him. That's correct, Your Honor. That's the conduct that's alleged. That's correct, Your Honor. In the complaint. Her conduct was supervision and control of him. So if I'm, if you're stuck with your second amended complaint and those facts, it seems to me the judgment against her is for her supervision and control of him. That's correct, Your Honor. Okay. All right. There's no question she actually performed any aspect of the massage itself. Okay. So she supervised and controlled him is your view? That's correct, Your Honor. That's her conduct that made her liable, vicariously liable. Is that right? Yes, Your Honor. But let me go back to that provision. Okay. But then, but follow with me. If her conduct that made her liable in her professional services is her supervision and she excludes coverage for supervisory conduct, not apply here. That's where I'm stuck. Because at the tail end of that Exclusion B, Your Honor, it's for entities, organizations not named as an insured. So again, that would be for her supervisory role as an owner of Serenity Spa. But her supervisory role over her own employees because she is a named insured, that exclusion does not apply. If you read that Exclusion B all the way to the end, Your Honor, the very tail end of it, it says for organizations . . . That doesn't even make sense. I mean, what's the point of having . . . you allege she supervised him. That's correct, Your Honor. Okay. That's her conduct. Her participation was supervision. And if that conduct was in the course and scope of her role as an owner of Serenity Spa, then the exclusion would apply. How would it be anything other than as an owner of Serenity Spa? Because this is her own employee. It's not Serenity Spa's employee. That's the big disconnect here, Your Honor. The purpose of that . . . It doesn't even have to be that. It says her capacity as proprietor, director, or employee of any enterprise not named as an insured. So you're saying the whole thing turns on whether he was employed by her personally or by Serenity Spa? That's correct, Your Honor. Okay. So that's the fact that you say was determined in the state court that he was employed by her? That's correct, Your Honor. Okay. And where do I see that? Other than . . . I know you say the judgments against her individually. And so . . . But that's not what the complaint alleges. The complaint does allege that Mr. Alpazar . . . But it also alleges he worked for Serenity Spa. And when we go to the evidence in the case, it's that he worked for Serenity Spa if he worked for anybody. Your Honor, we pled in the alternative. There's no question. I'm looking at the evidence in the state court. The evidence before the state court is that we have . . . I'm looking at the undisputed facts in the state court, and it looks like the undisputed facts in the state court is that if she's liable, it's because she supervised him as the owner of Serenity Spa. She's liable because he is her employee. She is vicariously liable for the acts of her employee. An individual is vicariously liable for the acts, okay, not Serenity Spa, even though we allege that, okay. We alleged two different claims. What does the record tell us? Does she say he's not my employee? He was an independent contract? Is that what she testified to? That's what she testified to, Your Honor. And as we cited in our brief, case law regarding the status of an employment relationship is fact-dependent and is not controlled by the labels given by the employer or the employee. And we had facts to demonstrate that Mr. Alpazar was actually the employee of Ms. Vega, not Serenity Spa. And what was that evidence? She testifies he's an independent contractor, or you allege what you allege. What evidence did you have in the state court to show she individually employed him? That she is the one who procured the place where he worked individually, not Serenity Spa. And was the lease in the record? The lease is not in the record, Your Honor. Okay. But what we have is the insurance policy that shows the additional insured as the tenant. And so, the insured is Ms. Vega, not Serenity Spa. We also have- We know the insured is Ms. Vega. In fact, it shows individually, it's got, I mean, I even think it's clearly intended to be her personal actions. It's all a member of the massage association. I mean, this is a big stretch here, but you may have an ambiguity, that's what I'm trying to say. If you look at the policy, you have to be a member of this organization. It's clearly intended to cover a member. That's correct. The person who does the services and nothing else. Now, maybe they didn't do it here on the professional good enough. Do you see what I'm saying? Your Honor, there is no question that Ms. Vega is the insured under the policy. What I'm saying is that the policy does not limit- You've answered my question. Thank you. Thank you, Counsel. Thank you, Your Honors. And thank you both for your efforts. This Court will be in recess until 9 a.m. tomorrow morning.